UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA SUTTON, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 11 C 5912 |
| v. | ) No. 11 C 5961 |
| | ) |
| PATRICK R. DONAHOE, Postmaster, General, U.S. Postal Service | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendant. | ) ) |

### MEMORANDUM ORDER

In several lawsuits against her former employer, the United States Postal Service, Plaintiff Sandra Sutton has claimed that the Postal Service violated various statutory and constitutional rights by failing to accommodate her disability, subjecting her to harassment and retaliation, terminating her employment, and denying various medical benefits. Two new complaints are before the court, and the Postal Service has moved to dismiss them. The Postal Service urges that Sutton's claims are barred by *res judicata*, that her employment discrimination claims are untimely, and that her constitutional claims are barred by the Supreme Court's decision in *FDIC v. Meyer*, 510 U.S. 471 (1994).

As more fully explained below, the motion to dismiss must be granted. Although Sutton believes the wrongdoing continues, all of her new claims arise from her employment relationship with the Postal Service, and were the subject of earlier litigation. Claims relating to Sutton's employment, which ended in 2002, are untimely. Claims that post-date her employment are also untimely, as well as barred under the doctrine of *res judicata*. Claims arising under the Age Discrimination in Employment or Rehabilitation Act are subject to charge-filing requirements; assuming the charges that Ms. Sutton filed were themselves timely, she failed to file her complaints in this court within 90 days of receiving a final decision on those charges, as required by law.

Finally, any common law or constitutional claims for money damages are barred by sovereign immunity. For all of these reasons, the complaints in this case are dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

From 1988 until 1992, Sandra Sutton was employed as a "mark-up clerk" at the North Suburban office of the United States Postal Service in River Grove, Illinois. *See Sutton v. Potter,* No. 02 C 2702, 2004 WL 603477, at *2 (N.D. Ill. Mar. 22, 2004) (Leinenweber, J.). Soon after she began the job, Sutton claims, she became sick from exposure to particulate matter in the workplace. *Id.* On the recommendation of her doctor, the Postal Service transferred her to a newly opened facility in Palatine, Iliinois, but during her first day at the new location, she suffered a severe allergic attack. *Id.* Following this incident, she left the workplace and never returned to work for the Postal Service. *Id.* She drew benefits from the federal Office of Workers' Compensation Programs ("OWCP") until July 2000. *Id.* at *3. More than a year later, in November 2001, Sutton was "administratively separated" from the Postal Service. *Id.* at *4.

In years since then, Sutton has filed numerous complaints with the Equal Employment Opportunity ("EEO") office and with OWCP. She has also filed six prior lawsuits against the Postal Service in this court. (Exs. 1-6 to Postal Service's Mot. to Dismiss.) First, in 2002, Sutton filed Case No. 02 C 2702, alleging that the Postal Service violated the Rehabilitation Act and the Age Discrimination Employment Act ("ADEA") by failing to accommodate "her medical condition of allergic rhinoconjunctivitis." *Sutton,* 2004 WL 603477, at *1. That case resulted in a settlement in June of 2004. (June 23, 2004 Minute Order [72], No. 02 C 2702.) In September of 2004, the court granted Sutton's motion to enforce the settlement, and ordered the Postal Service to pay Sutton $35,000 as soon as practicable. (Sep. 14, 2004 Minute Order [82], No. 02 C 2702.)

---

[1] The court's account is based upon allegations in the complaints Ms. Sutton filed and information contained in the records of her previous lawsuits, of which the court may take judicial notice.

In October of 2004, Sutton brought a similar employment discrimination suit on behalf of her deceased mother, who allegedly also once worked for the Postal Service. (No. 04 C 6922.) Judge Andersen dismissed that case for want of prosecution. (Feb. 03, 2006 Minute Order [7], No. 04 C 6922.) In November of 2004, Sutton brought another employment discrimination suit on her own behalf against the Postal Service. (No. 04 C 6967.) Judge Lindberg dismissed the case without prejudice, observing, "it appears to the court that this case is either a refiling of Case No. 02 C 2702, or is a new claim for which plaintiff has not yet exhausted her administrative remedies." (Nov. 24, 2004 Order [7], No. 04 C 6967.)

Sutton took no further action against the Postal Service until October 27, 2006. On that date, she filed three new lawsuits, Case Nos. 06 C 5870, 06 C 5871, and 06 C 5872. The three district judges to whom those cases were assigned dismissed them for reasons including sovereign immunity and failure to state a claim (June 1, 2007 Minute Order [23], No. 06 C 5870 (St. Eve, J.)); *res judicata* (June 5, 2007 Minute Order [18], No. 06 C 5871 (Lefkow, J.)); and lack of jurisdiction (Nov. 3, 2006 Mem. Order [6], No. 06 C 5872 (Shadur, J.)). Almost two years later, Sutton tried again, asking Judge Leinenweber for leave to reopen her original case, No. 02 C 2702; the court promptly denied the motion. (July 21, 2008 Minute Order [87], No. 02 C 2702.)

On April 18, 2011, Sutton initiated her most recent action by filing a grievance with an Equal Employment Opportunity Counselor. She alleged in her grievance that the Postal Service harassed her on the bases of race, gender, age, retaliation, and disability when (1) the OWCP refused to pay for her medication, (2) the Postal Service subjected her to illegal surveillance, and (3) the OWCP improperly compensated her. The EEO concluded that Sutton's grievance was identical to claims previously adjudicated in multiple forums, and therefore dismissed it. (Dismissal of Formal EEO Compl., attached to Compl., No. 11 C 5912, at 3-4.) On May 26, 2011, Sutton received the EEO's final decision dismissing her claims and notifying her that she was entitled to file a civil action in federal court "within 90 calendar days of receipt of this decision." (*Id*. at 5 (emphasis omitted).)

On August 25, 2011—91 days after May 26—she initiated a new lawsuit, Case No. 11 C 5912. Yet another case (No. 11 C 5961), filed the following day, has been consolidated with this one. This decision addresses those two new complaints.

Sutton again proceeds *pro se.* In Case No. 11 C 5912, she claims that the Postal Service discriminated against her on the bases of her age and disability by continued harassment, by failing to accommodate her disabilities, by terminating her employment, by retaliating against her for asserting her discrimination claims, by conducting illegal surveillance, and by denying her medical benefits. (Compl., No. 11 C 5912.) In Case No. 11 C 5961, Sutton claims that the Postal Service violated her constitutional rights by using excessive force against Sutton, failing to intervene to protect her from violations of her civil rights, failing to provide her with medical care, denying pay to which she was entitled, failing to disclose workplace hazards, denying her retirement disability benefits, conspiring to violate her civil rights, and subjecting her to surveillance. (Compl., No. 11 C 5961.)

## DISCUSSION

I.  *Res judicata*

The doctrine of *res judicata* bars claims that were asserted or could have been asserted in a prior action. *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). In federal court, the doctrine bars litigation where three elements exist: "(1) identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suits' operative facts)." *Palka*, 662 F.3d at 437. The court has little difficulty in concluding that those elements are satisfied. The first and second elements require only brief mention: As discussed above, Sutton has brought numerous claims against the Postal Service in the past. One case resulted in a settlement, and the court dismissed the remaining cases. Therefore, there have been final judgments in cases between the same parties.

The remaining issue is whether there is an identity of the cause of action between the instant claims and Sutton's previous claims. The Seventh Circuit has explained that "[t]he second element—whether an 'identity of the cause of action' exists—depends on whether the claims arise out of the same set of operative facts or the same transaction." *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011). Put another way, "'two claims are one for the purposes of res judicata if they are based on the same, or nearly the same, factual allegations.'" *Id.* (quoting *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)). Thus, in *Brzostowski v. Laidlaw Waste Systems, Inc.*, plaintiff alleged that his former employer had terminated him without the process called for by the company's employee handbook. 49 F.3d 337, 338 (7th Cir. 1995). After the court dismissed that claim, the plaintiff filed another complaint, this time asserting that the defendant had terminated him based on his age in violation of the ADEA. *Id*. Affirming dismissal of the second lawsuit on *res judicata* grounds, the court explained that although the legal elements of each claim may have been different, the factual issues in both cases were the same: defendant's employment actions and the plaintiff's termination. *Id.* at 339.

Not every case against a former employer is necessarily barred by an earlier discrimination claim; in *Herrmann*, the employer had prevailed in an earlier action where plaintiff sought continued health insurance benefits under the COBRA provisions of ERISA, but the court concluded that plaintiff's subsequent Title VII action could nevertheless proceed. 999 F.2d at 224-27. The COBRA claim was based on the post-termination processing of plaintiff's claim for benefits, the court reasoned, while her Title VII claim was aimed at the employer's conduct prior to her termination. *Id.* at 227.

In the case before this court, in contrast, all of Sutton's claims arise from the same operative facts: the allegedly unsafe working conditions at the Postal Service, Sutton's medical condition, and the Postal Service's alleged discrimination and harassment of Sutton. Sutton has identified no new

claims that were not asserted in her earlier lawsuits. The EEO effectively explained why Sutton may not again present these concerns:

> The record shows that your entire complaint is identical to multiple previous complaints in multiple forums. There is no evidence in the record to suggest that any controlling facts or legal principles have changed significantly since the respective agencies have rendered the aforementioned decisions, and there are no other special circumstances that would warrant an exception to the normal rules of preclusion.

(Dismissal of Formal EEO Compl. at 4.) This court agrees. Because each of Sutton's claims have been asserted or could have been asserted in her prior lawsuits against the Postal Services, Sutton's claims are barred by *res judicata*.

## II.     Timeliness

Sutton's case fails for a second reason, as well: her complaint is untimely. When a federal employee believes she has been discriminated against, the employee must first attempt to resolve the matter informally through an EEO counselor. 29 C.F.R. § 1614.105(a). If the matter is not resolved informally, the employee may then file a formal complaint with the EEO office. 29 C.F.R. § 1614.106. An employee who wishes to file a civil action in federal court must do so within 90 days of receiving notice of the EEO's final decision or, if the employee chooses to appeal that decision to the Equal Employment Opportunity Commission ("EEOC"), within 90 days of receiving the Commission's final decision on appeal. 42 U.S.C § 2000e-16(c); 29 C.F.R. § 1614.407(a), (c). Absent a basis for equitable tolling, filing one day beyond the 90-day deadline is fatal to a claim, even where a plaintiff is *pro se*. *See, e.g.*, *Estes v. Potter*, No. 05 C 5301, 2006 WL 2724921, at *1 (N.D. Ill. Sept. 20, 2006) (dismissing a postal employee's *pro se* race and sex discrimination claim for failure to file a complaint within 90 days of the EEOC's final decision).

It is undisputed that Sutton missed the 90-day filing deadline. She acknowledges receiving the EEO's final decision on May 26, 2011. (Compl., No. 11 C 05912, ¶ 7.2.) She did not file this civil action until August 25, 2011, 91 days after May 26, 2011. Nor is equitable tolling available

here; that relief is restricted to "'situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint on time.'" *Harris v. Brock*, 835 F.2d 1190, 1194 (7th Cir. 1987) (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)). In *Davis v. Browner*, an EPA employee claimed that she failed to file her complaint within 90 days of receiving the EEOC's final decision on August 12, 1999, because a person in the clerk's office misinformed her that she needed to obtain a right-to-sue letter. 113 F. Supp. 2d 1223, 1227 (N.D. Ill. 2000). The plaintiff wrote to the EEOC requesting the letter, and the EEOC responded with a letter confirming its final decision (received by the plaintiff on September 12, 1999), but the plaintiff waited until December 7, 1999 to file her complaint with the court. *Id.* at 1225. The court found no extraordinary circumstances for the delay where the plaintiff "received adequate notice of the deadline, there is no evidence of misconduct by the defendant, and plaintiff was not misled by the court." *Id.* at 1228 (footnotes omitted).

Sutton asserts that she believed she had one year in which to file her civil suit (*see* Pet'r's Resp. to Mot. to Dismiss (herinafter "Pl.'s Resp."), at 4 ("Union said one (1) year and retirement said one (1) year")), but her confusion is not an adequate basis for equitable tolling. Sutton received the EEO's notice, which clearly announces the 90-day limitation. Like the plaintiff in *Davis*, Sutton could easily have contacted either the EEO or the court in order to dispel any uncertainty she had. Sutton has suggested that her illness sometimes confines her to bed for as long as four months at a time (Pl.'s Resp. at 4-5), but such periodic incapacities do not toll the time for filing. "'[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.'" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 851 (7th Cir. 2001) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). Sutton's failure to comply with the 90-day deadline is an independent reason for dismissing this action.

**III.      Sovereign Immunity**

Finally, Defendant argues for dismissal of this lawsuit on the ground of sovereign immunity. Again, Defendant appears to be on solid ground.  As the Court explained in *FDIC v. Meyer*, "absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." 510 U.S. 471, 484-86 (1994).  In *Meyer*, the plaintiff sued the Federal Savings and Loan Insurance Corporation (FSLIC), alleging that the termination of his employment violated his Fifth Amendment rights. *Id.* at 473-74.  In making this claim, the plaintiff argued for an extension of the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which held that an individual may bring an action for damages against a federal agent who allegedly violated the Fourth Amendment.  *Meyer*, 510 U.S. at 484.

The Court declined to extend *Bivens* from federal agents to federal agencies, observing that such an extension is "not supported by the logic of *Bivens* itself." *Id.* at 486.  The Court reasoned that the purpose of *Bivens* is to deter the federal officer; if a federal agency could be sued directly, there would be no reason for aggrieved parties to bring actions for damages against individual agents and no avenue for deterrence.  *Id.* at 485.  Moreover, the court noted, because such an extension of *Bivens* would potentially create a large financial burden for the government, any such policy decision must be made by Congress, not by the courts. *Id*. at 486.

Like the plaintiff in *Meyer*, Sutton seeks money damages for a federal agency's alleged violation of her constitutional rights.  Under the rationale of *Meyer,* Sutton's purported constitutional claims for money damages against the Postal Service must be dismissed*.*

## CONCLUSION

Defendant's motion to dismiss [26] is granted.  These consolidated cases are dismissed. Plaintiff's motion for reconsideration [32] and motion "to cease and desist surveillance" [41] are

stricken. The court cautions Ms. Sutton that any renewed effort to bring suit against the Postal Service on these same claims may result in sanctions.

ENTER:

Dated: July 11, 2012

_____
REBECCA R. PALLMEYER
United States District Judge